UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DANIEL BARAHONA,

                                    Plaintiff,

                    v.                                                    **MEMORANDUM AND
                                                                          ORDER**
                                                                          22-CV-0594-SJB-ARL

HEBREW ACADEMY OF THE FIVE TOWNS AND
ROCKAWAY, et al.,

                                    Defendants.
-----------------------------------------------------------------X
**BULSARA, United States District Judge:**

        Plaintiff Daniel Barahona ("Barahona") filed this action against his former

employer, the Hebrew Academy of the Five Towns and Rockaway ("HAFTR"), as well

as David Leibtag and Ari Solomon (collectively, "Defendants"), alleging violations of

the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), and New York

State Human Rights Law ("NYSHRL").  (Compl. dated Feb. 1, 2022, Dkt. No. 1 ¶¶ 2–3,

59–64, 70–76).  Defendants have moved for summary judgment on all of Barahona's

claims.  (Defs.' Mot. for Summ. J. dated Mar. 21, 2025 ("Defs.' Mot."), Dkt. No. 49-1).

For the reasons explained below, Defendants' motion for summary judgment is granted

in part and denied in part.

                                    LEGAL STANDARD

        A "court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

"A genuine issue of material fact exists if 'the evidence is such that a reasonable jury

could return a verdict for the nonmoving party.'"  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "In determining whether summary judgment is appropriate, [the Court] must resolve all ambiguities and draw all reasonable inferences against the moving party."  *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways.  Fed. R. Civ. P. 56(c)(1).  It may cite to portions of the record "including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials."  *Id.* R. 56(c)(1)(A).  Alternatively, it may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  *Id.* R. 56(c)(1)(B); *cf. Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

In moving for summary judgment or answering such a motion, litigants are required by the Local Rules to provide a statement (a Rule 56.1 statement) setting forth purported undisputed facts or, if controverting any fact, responding to each assertion.  *See* Loc. Civ. R. 56.1(a)–(b).  In both instances, the party must support its position by citing to admissible evidence from the record.  *Id.* R. 56.1(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact).  "The purpose of Local Rule 56.1 is to streamline the

2

consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

Where claims in opposing Rule 56.1 statements are "genuinely disputed," the Court will consider the evidentiary sources of the claims. *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019) (adopting report and recommendation). In evaluating the sources of claims made in dueling Rule 56.1 statements, the Court cannot—as is true for the summary judgment motion as a whole—weigh evidence or assess the credibility of witnesses. *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994). Furthermore, "[l]egal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded." *Taveras v. HRV Mgmt., Inc.*, No. 17-CV-5211, 2020 WL 1501777, at *2 (E.D.N.Y. Mar. 24, 2020); *Lawrence v. Cont'l Cas. Co.*, No. 12-CV-412, 2013 WL 4458755, at *1 n.1 (E.D.N.Y. Aug. 16, 2013) ("Both parties have submitted Local Rule 56.1 statements and responses to each other's statements that mix factual assertions with legal argument and therefore fail to meet the requirements of Local Rule 56.1. The facts . . . are taken from those assertions contained in the Local Rule 56.1 statements that comply with Local Rule 56.1[.]" (citations omitted)). The court may not grant summary judgment based on a fact in a Rule 56.1 statement—even if undisputed—not supported by admissible evidence. *E.g., Giannullo v. City of New York*, 322 F.3d 139, 142–43 (2d Cir. 2003) (vacating grant of summary judgment to defendants based on facts enumerated in

Rule 56.1 statement supported only by arguments in briefs rather than admissible evidence).

The Court must also disregard conclusory denials that lack citations to admissible evidence. *Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("*Rule 56.1 statements are not argument. They should contain factual assertions, with citation to the record. They should not contain conclusions*[.]"), *aff'd*, 56 F. App'x 27, 29 (2d Cir. 2003). Also, where the opposing party fails to specifically controvert a numbered paragraph in the Rule 56.1 statement, the statement by the moving party "will be deemed to be admitted." Loc. Civ. R. 56.1(c). The Court also does not give any consideration to hearsay, speculation, or inadmissible evidence in evaluating declarations or affidavits. *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d Cir. 2010) ("[A] court is obliged not to consider inadmissible evidence at the summary judgment stage[.]"); *Crawford v. Dep't of Investigation*, No. 05-CV-5368, 2007 WL 2850512, at *2 (S.D.N.Y. Oct. 1, 2007) ("[A] non-moving party 'must set forth specific facts showing that there is a genuine issue for trial;' he or she 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" (quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005))), *aff'd*, 324 F. App'x 139, 143 (2d Cir. 2009).

4

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court finds the following facts—drawn from the pleadings, the parties' respective Rule 56.1 statements, and supporting affidavits and exhibits attached thereto—are undisputed unless otherwise noted.

Barahona began working for Defendants as a maintenance worker in 2013, when he was about 61 years old. (Defs.' Rule 56.1 Statement dated Mar. 21, 2025 ("Defs.' 56.1 Stmt."), Dkt. No. 49-2 ¶¶ 1, 3–4; Pl.'s Rule 56.1 Statement dated Apr. 28, 2025 ("Pl.'s 56.1 Stmt."), Dkt. No. 49-21 ¶¶ 1, 3–4). He continued to work for Defendants until March 2020, when HAFTR closed due to the COVID-19 pandemic. (Defs.' 56.1 Stmt. ¶ 7; Pl.'s 56.1 Stmt. ¶ 7). Barahona's regular assigned hours while working for Defendants were 7:00 a.m. to 3:30 p.m., with a thirty-minute lunch and two fifteen-minute breaks. (Defs.' 56.1 Stmt. ¶ 6; Pl.'s 56.1 Stmt. ¶ 6). Throughout his employment, Defendants paid Barahona the minimum wage. (Defs.' 56.1 Stmt. ¶ 28; Pl.'s 56.1 Stmt. ¶ 28).

Most of the remaining facts are disputed. There are four sets of factual disputes central to the pending motion. *First*, the parties dispute the extent to which Barahona worked overtime for Defendants, and whether he was properly compensated for all overtime. Defendants contend that they paid Barahona the correct overtime rate at all relevant times, (Defs.' 56.1 Stmt. ¶ 28), but Barahona denies that Defendants properly compensated him for all overtime worked, (Pl.'s 56.1 Stmt. ¶ 28). Defendants contend that Barahona cannot identify a specific time or date when he worked overtime and was not paid overtime by Defendants. (Defs.' 56.1 Stmt. ¶ 35). Barahona contends that he occasionally worked 42 hours per week, but Defendants only compensated him for

5

overtime if he worked over ten hours in one day.  (Pl.'s 56.1 Stmt. ¶ 35; Dep. of Daniel Barahona ("Barahona Dep."), attached to Pl.'s Opp'n to Defs.' Mot. for Summ. J. as Ex. 2, Dkt. No. 49-24 at 102:5–103:14).  The parties do not dispute that Defendants produced Barahona's wage-related records, including paystubs and timesheets.  (Defs.' 56.1 Stmt. ¶ 26; Pl.'s 56.1 Stmt. ¶ 26; Paystubs & Time Records, attached as Ex. 2 to Defs.' Mot., Dkt. No. 49-6).  But Defendants contend that Barahona does not challenge the veracity of the records, (Defs.' 56.1 Stmt. ¶ 27), which Barahona denies, (Pl.'s 56.1 Stmt. ¶¶ 27, 32).[1]

*Second*, the parties dispute whether Barahona was asked to return to HAFTR in August 2020.  Defendants contend that after speaking with Samuel Velez, Barahona's manager at HAFTR, Barahona decided he did not want to return.  (Defs.' 56.1 Stmt. ¶ 9).  Barahona denies this—he contends that he reached out to Velez after everyone else was asked to return, and Velez told him that he was not asked back because of his age.  (Pl.'s 56.1 Stmt. ¶¶ 7, 9; Barahona Dep. at 44:1-4, 47:4-15).

*Third*, the parties dispute whether Solomon, HAFTR's Executive Director, was involved in the hiring and compensation of the organization's maintenance workers.  Defendants contend that Solomon "[did not] have any involvement in the management of records, hiring, firing, or compensation of maintenance workers," including

---

[1] Barahona failed to cite to evidence from the record to support this denial in paragraph 27 of his Rule 56.1 Statement.  Nonetheless, Barahona elsewhere cites record evidence for the same proposition, (Pl.'s 56.1 Stmt. ¶ 32)—that he has contested the veracity of Defendants' records—and the Court "has broad discretion to determine whether to overlook a party's failure to comply with local court rules" and conduct an "assiduous review of the record," *see Holtz*, 258 F.3d at 73, as it has done here.  And it is plain from that record that Barahona contests this fact, based on his testimony.

Barahona.  (Defs.' 56.1 Stmt. ¶ 42).  Barahona denies this, contending that Solomon was involved in his hiring and firing because Velez, Barahona's manager, reported directly to Solomon.  (Pl.'s 56.1 Stmt. ¶ 42).

*Fourth*, the parties dispute whether HAFTR is a non-profit organization. Defendants contend that HAFTR is a non-profit organization, (Defs.' 56.1 Stmt. ¶ 2), while Barahona contends that HAFTR has earned profits from various sub-entities and different sources of business income, (Pl.'s 56.1 Stmt. ¶ 2).

Barahona filed this lawsuit on February 1, 2022.  (Compl., Dkt. No. 1).  In his Complaint, Barahona asserts the following claims: (1) violation of FLSA's overtime wage requirements, (*id.* ¶¶ 59–65); (2) violation of NYLL's overtime wage requirements, (*id.* ¶¶ 66–69); (3) violation of FLSA's minimum wage requirements, (*id.* ¶¶ 70–76); (4) violation of NYLL's minimum wage requirements, (*id.* ¶¶ 77–82); (5) violation of NYLL Section 191's pay frequency requirements, (*id.* ¶¶ 83–86); (6) violation of NYLL Section 195(1)'s notice and recordkeeping requirements, (Compl. ¶¶ 87–89); (7) violation of NYLL Section 195(3)'s wage statement requirements, (*id.* ¶¶ 90–92); and (8) age discrimination in violation of NYSHRL Section 296, (*id.* ¶¶ 93–100).  He asserted these claims against HAFTR, his former employer, as well as David Leibtag (alleged to be the owner of HAFTR in the Complaint) and Ari Solomon (HAFTR's Executive Director). (*Id.* ¶¶ 2, 12, 18).  Defendants now seek summary judgment on all of Barahona's claims. (Defs.' Mot. at 20).[2]

---

[2] This case was reassigned from the Honorable Diane Gujarati to the undersigned on January 7, 2025.

7

DISCUSSION

As an initial matter, Barahona abandoned several of his claims in his summary judgment motion papers.  Specifically, he "concedes on the minimum wage and NYLL 195 arguments made in Defendants' . . . motion" and "concedes that David Leitbag [sic] is not a proper party in this action and agrees that the claims against him should be dismissed."  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. dated Apr. 28, 2025 ("Pl.'s Opp'n"), Dkt. No. 49-20 at 2 n.1).  Because Barahona conceded these claims, the Court deems them abandoned and grants summary judgment in favor of Defendants on them.[3]  *See Ziming Shen v. City of New York*, 725 F. App'x 7, 17 (2d Cir. 2018) (affirming the district court's dismissal of two claims "on the basis that [plaintiff's] opposition to summary judgment did not address those claims"); *Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 340 (E.D.N.Y. 2006) ("Because plaintiff's opposition papers did not address defendants' motion for summary judgment on [a] claim, [that] claim is deemed abandoned and summary judgment could be granted on that basis alone.") (collecting cases); *LPD New York, LLC v. Adidas Am., Inc.*, No. 15-CV-6360, 2022 WL 4450999, at *27 (E.D.N.Y. Sep. 24, 2022) (granting defendants summary judgment as to counterclaims

---

[3] Barahona also abandoned the collective action component of his case initially asserted in the Complaint.  (Pl.'s Opp'n at 14); *see Cooper v. Fire & Ice Trucking, Corp.*, No. 23-CV-1675, 2024 WL 3344001, at *9 (E.D.N.Y. July 9, 2024) ("Because Plaintiff did not reiterate his collective action certification request in his Motion for Default Judgment, the Court considers the collective action abandoned.").

because plaintiff did not dispute or respond to them) (collecting cases). These claims are dismissed with prejudice.[4]

The Court proceeds to analyze the following remaining issues: (1) Barahona's claim for unpaid overtime wages under FLSA and NYLL; (2) Solomon's status as an "employer" under FLSA and NYLL; (3) the willfulness of any FLSA violation by Defendants; (4) Barahona's age discrimination claim under the NYSHRL; and (5) Barahona's claim for violation of NYLL Section 191's pay frequency requirements.

## I.    Unpaid Overtime Under FLSA and NYLL

FLSA's overtime wage requirement provides that an employee working "in excess of" 40 hours in a given workweek be compensated for that "excess work 'at a rate not less than one and one-half times the regular rate at which he is employed.'" *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113–14 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)). And "the NYLL adopts this same standard." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing N.Y. Lab. Law § 142-2.2). To establish liability for unpaid overtime under the FLSA or the NYLL, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that

---

[4] Barahona asks the Court to dismiss his NYLL Section 195 claims without prejudice "so that he can pursue them in the proper forum." (Pl.'s Opp'n at 15). Barahona cites no cases to support a without prejudice dismissal in these circumstances. Barahona chose to concede his NYLL Section 195 claims, while simultaneously opposing summary judgment on the remaining claims. In doing so, he abandoned his opposition to dismissal of the claim on the merits.

work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011); *Nakahata,* 723 F.3d at 200–01 (applying the same standard to FLSA and NYLL overtime claims).[5]

To start, Defendants' contention that Barahona failed to satisfy the pleading standard for an unpaid overtime claim is without merit. The Second Circuit has addressed the level of specificity required to successfully plead an unpaid overtime claim in a series of four cases. *See Lundy*, 711 F.3d at 114; *Nakahata*, 723 F.3d at 201; *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89–90 (2d Cir. 2013); *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 114–15 (2d Cir. 2023). "[T]o state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy*, 711 F.3d at 114. A plaintiff must allege "sufficient factual matter." *Id.* It is not enough to allege that overtime was "regularly worked" or occurred in "some or all workweeks"—such conclusory statements do nothing more than paraphrase the statute. *Dejesus*, 726 F.3d at 89–90 (quotations omitted). Instead, "[p]laintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata*, 723 F.3d at 201. In *Lundy* and *Nakahata*, the Court of Appeals concluded that the plaintiffs failed to state unpaid overtime claims because the plaintiffs did not allege they regularly worked a 40-hour workweek, and therefore their overtime allegations, even taken as true, did not establish that there was a week in which they worked in excess of 40 hours. *Lundy*, 711

---

[5] Defendants do not contest that HAFTR is an employer subject to FLSA, or that Barahona is a covered employee under FLSA.

F.3d at 115; *Nakahata*, 723 F.3d at 201.  That is not the case here.  There is no dispute that Barahona's regularly scheduled workweek consisted of 40 hours.  (Defs.' 56.1 Stmt. ¶ 6; Pl.'s 56.1 Stmt. ¶ 6; *see, e.g.*, Paystubs & Time Records at 115, 161 (recording 8 hours of work each weekday)).  And in addition, Barahona testified that he occasionally worked an extra two hours per week but was only compensated for overtime if he worked more than ten hours in one day.  (Pl.'s 56.1 Stmt. ¶ 35; Barahona Dep. at 103:13-18).  Taken together, these allegations make it plausible that Barahona worked 40 hours a week and worked uncompensated overtime in excess of the 40 hours.  *See, e.g.*, *Aguilar v. Calexico Cinco LLC*, No. 22-CV-6345, 2024 WL 3837669, at *5 (E.D.N.Y. June 28, 2024) (finding plaintiff's overtime claim sufficiently pled where he alleged facts indicating a 40-hour workweek and claimed that "[a]pproximately twice per week" he was "required to stay back fifteen (15) minutes after clocking out of his shift to help finish cleaning the kitchen").

*Dejesus*, cited by Defendants in support of their argument that Barahona has failed to sufficiently plead his overtime claims, (Defs.' Mot. at 10), does not support dismissal.  Although some "specificity" is required, plaintiffs are not required to "keep careful records" of time worked or "plead their hours with mathematical precision." *Dejesus*, 726 F.3d at 89–90.  In *Dejesus*, the plaintiff alleged that "she worked more than forty hours per week during 'some or all weeks' of her employment." *Id.* at 86. Barahona has done more—he testified that he occasionally worked 42 hours per week and was only compensated if he worked more than ten hours in one day.  (Pl.'s 56.1 Stmt. ¶ 35; Barahona Dep. at 102:5–103:2, 103:13-18).  And while Defendants highlight

that Barahona could not provide "any specific dates or any specific times in which he was asked to work overtime and was not paid," (Defs.' Mot. at 10; Defs.' 56.1 Stmt. ¶ 35 (citing Barahona Dep. at 107:3-24)), that is not the relevant requirement, *see Dejesus*, 726 F.3d at 88 ("We therefore declined to make an approximation of overtime hours a necessity in all cases.  We remarked, however, that an approximation 'may help draw a plaintiff's claim closer to plausibility.'" (quoting *Lundy*, 711 F.3d at 114 n.7)); *Herrera*, 84 F.4th at 116–17 ("The pleading standard is satisfied, however, if plaintiffs allege that their regularly scheduled workweek for a given period of time included more than forty hours of work, so that they were eligible for overtime during *every* week in which they worked their regular schedule.  In that case, a plaintiff . . . need only allege the period of time during which they were employed.").[6]  Barahona has pled his unpaid overtime claims with sufficient specificity.[7]

---

[6] Defendants also cite *Daniels v. 1710 Realty LLC*, 497 F. App'x 137 (2d Cir. 2012), in support of their arguments that Barahona's allegations are not sufficient to survive summary judgment.  (Defs.' Mot. at 10–11; Defs.' Reply in Supp. of Mot. for Summ. J. dated May 22, 2025 ("Defs.' Reply"), Dkt. No. 49-26 at 4).  But *Daniels* was an appeal from a bench trial, and the Second Circuit concluded that the district court, as the factfinder, was entitled to make a credibility determination to discredit the plaintiff's testimony.  *Daniels*, 497 F. App'x, at 138–39.

[7] Defendants also ask the Court to disregard Barahona's Affidavit as a "sham affidavit."  (Defs.' Reply at 1–2).  But Defendants fail to allege any inconsistences between Barahona's Affidavit and his deposition testimony.  *See Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 482 (2d Cir. 2014) ("The principle is that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." (quotations omitted)).  In any event, the Court does not rely on the Affidavit in denying Defendants' motion.

In assessing Defendants' motion for summary judgment on Barahona's claims for unpaid overtime, the burden-shifting framework set forth in *Anderson v. Mt. Clemens Pottery Co.* applies.  328 U.S. 680 (1946), *superseded by statute on other grounds*, 29 U.S.C. § 254(a); *see Kuebel*, 643 F.3d at 361–64.  An employee must prove "that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work."  *Kuebel*, 643 F.3d at 361.  "When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records."  *Anderson*, 328 U.S. at 687.  However, "if an employer's records are inaccurate or inadequate, an employee need only present 'sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference.'"  *Kuebel*, 643 F.3d at 362 (quoting *Anderson*, 328 U.S. at 687).  "[A]n employee's burden in this regard is not high," and "it is possible for a plaintiff to meet this burden through estimates based on his own recollection."  *Id.* Doing so permits a plaintiff to survive a defendant's summary judgment motion.  *Id.*

A similar standard applies to unpaid overtime claims under the NYLL, "[b]ut under the NYLL, an employer who fails to keep accurate records shoulders a more stringent burden of proof," at trial.  *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017), *aff'd,* 752 F. App'x 33 (2d Cir. 2018).  Under the FLSA, if an employee has met his burden, at trial, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687–88.  But "the NYLL—unlike the FLSA—does not permit an

13

employer to discharge this burden by undermining the reasonableness of an employee's evidence that he was underpaid." *Gamero*, 272 F. Supp. 3d at 498. The NYLL provides that the ultimate trial burden is greater for an employer: "where an employer fails to keep adequate records or provide statements of wages to employees as required by the statute, the employer shall bear the burden of proving that the complaining employee was paid wages, benefits, and wage supplements." *Id.* (quotations omitted). Therefore, "[i]f an employer cannot satisfy its burden under the FLSA, it cannot satisfy [the] more demanding burden of the NYLL." *Id.* (quotations omitted). And the same is true for summary judgment: should a party survive summary judgment on a FLSA overtime claim, based on the absence of accurate records and through competent employee evidence, the NYLL claim cannot be dismissed at that stage either. *See e.g.*, *Lawrence v. NYC Med. Prac., P.C.*, No. 18-CV-8649, 2023 WL 4706126, at *6 (S.D.N.Y. July 21, 2023) (denying summary judgment on FLSA and NYLL overtime claims where plaintiffs stated in their declarations that defendants' time records were "inaccurate because Defendants modified or tampered with them").

Here, the parties dispute the accuracy of Defendants' records—specifically the timesheets produced by Defendants.[8]  (Defs.' 56.1 Stmt. ¶ 27; Pl.'s 56.1 Stmt. ¶¶ 27, 32). Defendants contend that Barahona has not disputed their accuracy, (Defs.' 56.1 Stmt. ¶ 27), which Barahona disputes, (Pl.'s 56.1 Stmt. ¶ 27). The record reflects a genuine

---

[8] The parties do not genuinely dispute the accuracy of the paystubs, (*see, e.g.*, Paystubs & Time Records at 1), as a reflection of what Plaintiff was actually paid. (*See* Barahona Dep. at 87:17-90:7). But the paystubs flowed from the time sheets, which Barahona disputes were accurate, so they do not provide an independent basis for summary judgment on Barahona's overtime claims.

dispute over the accuracy of Defendants' time records.  During his deposition, Defendants showed Barahona one of the timesheets they produced, and Barahona stated that he "d[id not] know who" completed the form, "but the one that would complete it . . . would be Samuel," referring to another person.  (Barahona Dep. at 100:21-23).  He stated that the handwriting on the form was not his.  (*Id.* at 100:24–101:2).  And as noted earlier, Barahona also testified that Defendants would only pay him overtime if he worked more than ten hours in one day.  (*Id.* at 103:10–104:4).  The dispute over the accuracy of Defendants' records presents a factual dispute that cannot be resolved at summary judgment.  Because Barahona has contested the accuracy of Defendants' records, he need only present sufficient evidence to show the amount and extent of the uncompensated work "as a matter of just and reasonable inference."  *See Kuebel*, 643 F.3d at 363 ("[W]e hold that because Kuebel has presented evidence indicating that his employer's records are inaccurate . . . the district court should have afforded Kuebel the benefit of *Anderson*'s 'just and reasonable inference' standard.").  And he may rely on his own testimony to do so.  *Id.* at 362; *see, e.g.,* *Aponte v. Mod. Furniture Mfg. Co., LLC*, No. 14-CV-4813, 2016 WL 5372799, at *12 (E.D.N.Y. Sep. 26, 2016) ("The records submitted by the Defendants do not reflect [the additional overtime hours plaintiffs testified to at their depositions] . . . . Thus, crediting the Plaintiffs' testimony—which the Court must do at this stage of the litigation—a reasonable jury could conclude that the time records submitted by the Defendants are not accurate or complete because they did not account for the Plaintiffs' claimed overtime hours.").  Barahona's testimony that he occasionally worked 42 hours per

week, an amount of time not reflected in Defendants' records, coupled with his testimony that Defendants only paid him for overtime if he worked more than ten hours in a day, is sufficient to show the amount and extent of his uncompensated work as a matter of just and reasonable inference. And that is enough to survive summary judgment. To resolve the dispute between Barahona's testimony and the time records submitted by Defendants would require the Court to weigh the evidence and make a credibility determination, which is inappropriate at summary judgment. *See Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 146 (2d Cir. 2012) ("A jury reviewing the evidence in this record might well conclude that the evidence that Donnelly presents is insufficient to persuade it to find that he spent three or more hours beyond the CBA-maximum time engaged in activities integral to his employment. That factual inquiry is not ours to answer."); *e.g.*, *Pest v. Bridal Works of N.Y., Inc.*, 268 F. Supp. 3d 413, 426 (E.D.N.Y. 2017) ("Even if plaintiff's allegations are inconsistent or lack specificity as to certain weeks during her employment when she did not work Saturdays, or certain weeks when she worked fewer than 57 hours, it is not appropriate for the Court to determine, at this stage, whether plaintiff's testimony is credible." (citation omitted)); *Pierre v. Hajar, Inc.*, No. 15-CV-2772, 2018 WL 2393158, at *4 (E.D.N.Y. Mar. 28, 2018) (collecting cases).

## II.    Solomon's Employer Status Under FLSA and NYLL

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An individual may be jointly and severally liable to an employee under FLSA where the individual

16

exercises "operational control" over that employee. *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013). "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* "In identifying the persons or entities who qualify as 'employers,' . . . statutory definitions sweep broadly." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 140 (2d Cir. 2008).

In making this determination, the "economic reality" of the employment relationship is the core of the inquiry. *Irizarry*, 722 F.3d at 104. That is, courts look to "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (quotations omitted); *see, e.g.*, *Irizarry*, 722 F.3d at 110 (applying *Carter*). "[T]he 'economic reality' test encompasses the totality of the circumstances," and no single factor is dispositive. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). New York courts interpret the definition of "employer" under NYLL coextensively with the definition under FLSA. *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); *see also Sanchez Juarez v. Siderakis*, No. 23-7972, 2024 WL 5135383, at *2 n.3 (2d Cir. Dec. 17, 2024) ("For purposes of this appeal, we assume, without deciding, that the tests for 'employer' status are the same under the FLSA and the NYLL." (quotations omitted)).

17

Ari Solomon is the Executive Director of HAFTR.  (Defs.' 56.1 Stmt. ¶ 42; Pl.'s 56.1 Stmt. ¶ 42).  The parties dispute whether Solomon had any involvement in the hiring, firing, and compensation of maintenance workers like Barahona, as well as whether he was involved in the management of records.  (Defs.' 56.1 Stmt. ¶ 42; Pl.'s 56.1 Stmt. ¶ 42).

Looking to the underlying evidence cited by the parties, Defendants are not entitled to summary judgment on Solomon's employer status.  While Solomon may not have had direct involvement in the hiring or firing of maintenance workers at HAFTR, (*see* Dep. of Ari Solomon ("Solomon Dep."), attached to Pl.'s Opp'n as Ex. 3, Dkt. No. 49-25 at 167:1–169:16), the economic realities test asks not only whether he hired and fired employees, but whether he had the power to do so, and more broadly whether he engaged with employees in a substantive way that exhibited control over their hours and work schedules, *Carter*, 735 F.2d at 12; *see also Herman*, 172 F.3d at 139 ("[S]uch status does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees.  Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA.").  The record contains sufficient evidence from which a jury could conclude that Solomon had such power — even if he did not frequently exercise it.  Solomon testified that Velez had "the right to hire and let go of staff members, and set their salaries."  (Solomon Dep. at 166:21-25).  He also testified that Velez only had to go through HR to hire or fire a maintenance worker, and that Velez did not have to report that to him.  (*Id.* at 167:1–24).  But, when asked

18

whether HR lets him know "I spoke with [Velez], this is what he wants to do, is that cool with you, anything like that?", Solomon responded "not all the time." (*Id.* at 168:4-7). And Solomon further testified that Velez reports directly to him. (*Id.* at 65:10-17).

Moreover, Defendants' contention that Solomon had no involvement in the compensation of maintenance workers, (Defs.' 56.1 Stmt. ¶ 42), is flatly inconsistent with the record. Solomon testified that he and Velez would "go through raises" and he would "basically scan it to make sure nothing looks . . . outrageous." (Solomon Dep. at 66:5-12). When asked specifically whether "to make employment decisions, like the rate of pay of a worker" Solomon was the one Velez reported to, Solomon responded "yes." (*Id.* at 65:14-17). This suggests Solomon had at least some involvement in the compensation of maintenance workers. The record contains sufficient facts for a jury to conclude that Solomon exercised enough "operational control" over Barahona to be considered his "employer" under FLSA and NYLL. Therefore, Defendants' motion for summary judgment on the issue of Solomon's employer status is denied.

## III.    Willfulness Under FLSA

"An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." *Kuebel*, 643 F.3d at 366 (quotations omitted). While Barahona has provided sufficient evidence to survive summary judgment on his unpaid overtime claims under the FLSA, Barahona has not offered any evidence to suggest that Defendants' alleged violation was willful. The parties' 56.1 statements do not contain any facts that suggest Defendants knew they were violating the FLSA by not compensating Barahona for the

19

alleged additional two hours per week or showed a reckless disregard for the fact that the FLSA prohibits such conduct.  Barahona does not separately defend the willfulness claim in his opposition papers, and the Court finds no evidence establishing willfulness. Accordingly, Defendants' motion for summary judgment on the issue of willfulness is granted.

## IV.    NYSHRL Age Discrimination Claim

The NYSHRL provides that it is unlawful "[f]or an employer . . . because of an individual's age . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions, or privileges of employment."  N.Y. Exec. Law § 296(1)(a) (McKinney 2025).  In most cases, "NYSHRL discrimination claims are governed at the summary judgment stage by the burden-shifting analysis first established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 [] (1973)."  *Tolbert*, 790 F.3d at 434.  Under the three-step *McDonnell Douglas* framework, a plaintiff bears the initial burden of establishing a prima facie case of age discrimination, by showing "(1) that []he was within the protected age group, (2) that []he was qualified for the position, (3) that []he experienced [an] adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination."  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 302 n.3. (quoting *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012)).  "Once a prima facie case is established," the defendant must produce evidence of a "legitimate, non-discriminatory reason for the adverse action."  *Id.* (quotations omitted).  And finally, the plaintiff must

20

in turn "rebut [this] by showing that the employer's determination was in fact the result of [age] discrimination." *Id.* (quotations omitted).  Where there is direct evidence of discrimination, a court may be able to dispense with the second and third parts of the framework. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (noting that *McDonnell Douglas* applies on summary judgment "where there is no direct or overt evidence of discriminatory conduct").

Barahona has put forth sufficient evidence to establish a prima facie case of age discrimination.  The parties do not dispute that Barahona was within the protected age group when he was asked not to return, or that Barahona was qualified for the position.  Barahona has also offered evidence that he experienced an adverse employment action—not being asked to return to work after being placed on furlough.  *See Payne v. Cornell Univ.*, No. 21-0109, 2022 WL 453441, at *2 (2d Cir. Feb. 15, 2022) (stating that employer's "decisions not to rehire [plaintiff] for different roles" after her layoff were "adverse employment actions" under NYSHRL).  And lastly, he has put forth evidence that he was not asked to return to HAFTR because of his age.  He testified that he called Velez to ask why he was not called to return to work when everyone else was, (Barahona Dep. at 120:13–121:5), and that Velez said he was not getting his job back due to his age, (*id.* at 121:6-19), which is direct evidence of discriminatory intent, *see, e.g.*, *Ames v. Cartier, Inc.*, 193 F. Supp. 2d 762, 768 (S.D.N.Y. 2002) (describing "an unequivocal statement by an employer that an employee is being terminated for an impermissible reason" as "direct evidence").

Defendants do not attempt to demonstrate an absence of material fact on any other aspect of the *McDonnell Douglas* inquiry.  And, they cannot, therefore, prevail on summary judgment.  *Tolbert*, 790 F.3d at 438 ("There was no argument in the district court or before us that summary judgment should be granted at the second or third stages of the *McDonnell Douglas* analysis.  Therefore, because we conclude that Mr. Tolbert met his initial burden of establishing a prima facie case of discrimination, we vacate and remand with respect to the § 1981, Title VII, and NYSHRL discrimination claims.").  Defendants' arguments amount to nothing more than a request that the Court discredit Barahona's testimony.  (*See* Defs.' Mot. at 17–18).  Barahona testified that he called Velez and Velez told him he was not asked to return to HAFTR because of his age.  (Pl.'s 56.1 Stmt. ¶ 9; Barahona Dep. at 121:18-19).  Defendants contest this based on Velez's Affidavit, which states "on or about August 1, 2020, I spoke with Plaintiff and offered him his job back, which he declined."  (Defs.' 56.1 Stmt. ¶ 9; Aff. of Samuel Velez dated Mar. 21, 2025, attached to Defs.' Mot. as Ex. 9, Dkt. No. 49-16 ¶ 8).  This dispute boils down to a credibility determination between two people inappropriate for summary judgment resolution.  *See Knox v. CRC Mgmt. Co., LLC*, 134 F.4th 39, 48–49 (2d Cir. 2025); *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 80 (2d Cir. 2016) ("In discrimination cases . . . the issue frequently becomes one of assessing the credibility of the parties.  At summary judgment, however, that issue is necessarily resolved in favor of the nonmovant." (quotation omitted)).  Because the only issue that remains is one of

22

credibility,[9] summary judgment is inappropriate on the NYSHRL claim.  A reasonable jury could conclude that Defendants discriminated against Barahona based on his age.[10]

## V.      NYLL Section 191 Claim

NYLL Section 191 provides that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned."  N.Y. Lab. Law § 191(1)(a) (McKinney 2025).  However, manual workers employed by "non-profitmaking organization[s] shall be paid in accordance with the agreed terms of employment, but not less frequently than semi-monthly."  *Id.*  The NYLL defines a "non-profitmaking organization" as "a corporation, unincorporated association, community chest, fund or foundation organized and operated exclusively for religious, charitable or educational purposes, no part of the net earnings of which inure to the benefit of any private shareholder or individual."  *Id.* § 190(9).

The parties dispute whether HAFTR is a non-profitmaking organization under the NYLL, (Defs.' 56.1 Stmt. ¶ 2; Pl.'s 56.1 Stmt. ¶ 2), which would make it exempt from Section 191's weekly pay requirement for manual workers.  Looking to the evidentiary sources cited by each of the parties, the Court concludes that there is no genuine factual dispute as to whether HAFTR is a non-profitmaking organization.  Defendants submitted HAFTR's New York ST-119 tax-exemption form as evidence of its non-profit

---

[9] Arguably, Barahona has cited direct evidence of age discrimination, namely that Velez told him he was asked not to come back because of his age.  That obviates any need to analyze whether Defendants have a non-discriminatory reason for the adverse action.  But in any event, Defendants do not offer such a reason.

[10] Defendants cursorily attempt to dismiss Solomon from the NYSHRL claim, (*see* Defs.' Mot. at 19), but provide no legal or factual support for concluding that he is not an employer.

status.[11]  (Exempt Organization Certificate, attached to Defs.' Mot. as Ex. 7B, Dkt. No. 49-12).  Barahona cites a portion of Solomon's deposition, in which Solomon states he is not aware of whether any of HAFTR's financial documents indicated that it may have turned a profit, (Pl.'s 56.1 Stmt ¶ 2; Solomon Dep. at 147:8–16), to dispute HAFTR's non-profit status.  These statements are insufficient to create a fact issue as to whether HAFTR is a non-profit under the NYLL.  Defendants' motion for summary judgment is granted as to Barahona's NYLL Section 191 claim, because non-profit entities are exempt.

## CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment is granted in part and denied in part.  Defendants' motion is granted with respect to the claims Barahona abandoned—the minimum wage claims under the FLSA and the NYLL and the NYLL § 195(1) and § 195(3) claims—and the Court dismisses these claims with prejudice.  All claims against David Leibtag are also dismissed with prejudice. The Clerk of Court is respectfully directed to remove David Leibtag from the docket.

Defendants' motion for summary judgment is also granted on Barahona's NYLL § 191 claim, and on the issue of willfulness under the FLSA.  However, the Court denies Defendants' motion with respect to Barahona's claims for unpaid overtime under FLSA and NYLL, Solomon's status as an employer under FLSA and NYLL, and Barahona's claim for age discrimination in violation of the NYSHRL.  The parties are directed to

---

[11] Defendants also purported to submit a copy of HAFTR's 501(c)(3) paperwork, but failed to actually attach that paperwork to the motion.

submit a joint proposed pretrial order by **March 13, 2026**, consistent with the

undersigned's Individual Practices.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:  February 11, 2026
       Central Islip, New York

25